THIS is a bill filed to set up a bond and mortgage al-jedged to have been given by the defendant, Oliver, to the deceased Mr. Addison, and lost by him in his lifetime- The bond is stated to liave been dated on the 1st of May, 1805, and conditioned to pay the sum of $3400. The mortgage of the same date for nine negroes, to secure the debt.
The answer of Mr. Oliver admits that the bond mortgage mentioned in tbe bill, were made and executed by him ; but denies that he was indebted to the deceas■ed Mr. Addison in that or any other sum; and avers that the bond was given without any consideration; but that being indebted to others, and fearful of being by a hard creditor, he had given this bond and mortgage to Mr. Addison, in order to cover his property until he could collect funds, to pay his debts, without-any view to ultimate fraud or imposition. And that Mr. Atldi-eon being intimate with the defendant, he agreed to ° cept and bold tbe said bond and mortgage in special confidence merely to shelter defendant’s property for time. And also that Mr. Addison shortly after the cution of the said bond and mortgage, to wit, on the 12th of May, 1805, gave this defendant a receipt or memorandum, explaining the transaction, xng that he had no claim on the defendant on account *536 saic*í>0Tltl aníl moi*tgage, an*l that he held the same merely as a shelter to defendant’s property against his creditors ; and that he would deliver up the bond and mortgage when required.
The defendant states that he has no doubt, if Mr. Ad~ c]jcj0n had lived, he would have delivered up the bond and x mortgage. On the trial of the cause much testimony giveM the material part of which will be hereafter notired.
The first Question aiid indeed the principal on^ in the was> whether the bond and mortgage were given secure ajust debt, or were fabricated vvithoutany con-®ideration for the ápeciaí purpose of covering Mr. 011-ver’s property from his creditors.
The executor of Mr. Addison, knowing nothing of. tiie transaction relied on the bond and mortgage them- , ° n as evidencing a real debt. The defendant, Oii-ver> relied on the receipt or memorandum in writing, al-o-[edged to have been given by Mr. Addison to Mr. Oliver, so on after the date of the bond, acknowledging the ^011^ aili* mortgage to have been executed without any consideration ; and accepted by him for the special pur-Poso °f sheltering Mr. Oliver’s property. And the defendant further relied on the verbal declarations of Mr. Addison to the same effect.
The testimony as to the genuineness of the receipt oi*-memorandusn, was very contradictory. It is due however to the witnesses to say that they all gave their testimony with great candor and caution, and that the difference of opinion which prevailed between them might well exist on such a question. Mrs. Sergeant who wad very clear in all her testimony, was very sure that the signature of Mr. Addison (who was her father) to the receipt, was not in his hand writing, but that it was in the hand writing of Mr. Williams, who was a relation and friend of her father, and who was often employed to write for Mm, and sometimes wrote letters, and signed his name to them ; but she did not know that he had ever signed receipts or bonds. Mr. Darrell stated that- *537 he knew the hand writing of Mr. Addison very weli the last two years of his life $ that he had carefully examined the signature in question, and though there was ” 'i ’ n a strong similitude to Mr. Addison’s hand writing he did not believe it was in Mr. Addison’s hand writing that in fact, it was better than he had ever seen him write. On the other hand Mr. Norwood who had a slight knowledge of Mr. Addison’s hand writing, swears that he examined the receipt carefully, and he was of opinion that the signature in question was in Mr. Addi.* souls own hand writing, and that he and Mr. Davis a* greed that when Mr. Oliver produced the receipt to Mr» Lequeux, the executor of Mr. Addison, at the time he caused Mr. Oliver to he arrested on the ne exeat issued in this case, Mr. Lequeux appeared to be satisfied that it was Mr. Addison's signature ; and in that persuasion actually discharged Mr. Oliver from the arrest, though he declared that as he was acting for an estate, he must ^go on with the suit. In the perplexity arising from these different opinions, we are obliged to resort to tha circumstances. Mrs. Sergeant, whose testimony was the strongest on this point against the defendant, states that she thought the signature of her father’s name was in the hand writing of Mr. Williams, that friend and re*> lation of her father, who was originally employed to write for him, and even signed his letters. And Mr» Williams’s signature as a subscribing witness to the receipt, is admitted on all hands to be genuine. Now as there is no imputation on the character or conduct of Mr. Williams, this furnishes a presumption that the signature of Mr. Addison’s name, if not made by himself^ was made by his direction by Williams. Another consideration of weight is the evidontia rei, furnished by or ther circumstances of the case. The testimony as ta Mr. Addison’s verbal declarations is (as we shall presently see) very strong to establish the fact that the bond and mortgage were not given for any consideration, but merely to shelter Oliver’s property. This furnishes a strong presumption that Oliver would require and Ad^ *538 ¿ison would give a private memorandum explanatory of ^ie rea* nature °f the transaction, such as the receipt in *lucs^on PurP01’te to be ; as well to guard against death, ^ ^ pPeVent an improper use of the bond and mortgage> Men acting such an immoral part as Oliver was doing, are apt to be suspicious, and to guard against others acting a similar part by them. It is however a great consolation that we are not obliged to decide this case on the testimony alone which relates to the receipt, which must after all be allowed to leave doubts on the mind.
In considering the second ground of defence, the ver» bal declarations of Mr. Addison as to the nature of this transaction, we have very dear and decisive testimony. Mrs. Sergeant (who was swearing directly against her interest) and Mr. Doyle and Mr. Shackleford all agree that Mr. Addison did repeatedly and deliberately on various occasions declare to each of them that the bond and mortgage in question, were not given to him for any valuable consideration-; but were executed by Oliver and received by him for the special and sole purpose of covering the property of Oliver from his creditors. Some circumstances were ingeniously urged by the counsel to weaken the effect of this testimony ; but they were by no means of such weight as to affect in any degree the plain and positive testimony of three irreproachable witnesses. Nor is there a conceivable reason why Mr. Addison should have made such repeated and solemn declarations, as they impute to him, against his own interest, unless it had been the very truth of the case. This would appear to put an end to the executor’s claim to set up this bond and mortgage as evidences of a real debt, which he has a right to claim from the defendant. But it was contended by the complainant’s counsel, that at all events, this was a voluntary bond obligatory on the defendant; and which he could not get rid of, though bis creditors might have set them aside. A good deal of learning was gone into on this point; but it does not ' appear to me to have any application to the case. This *539 was not a voluntary bond, in the proper sense of those words. It was not intended to create any obligation on Oliverio Addison. It was expressly made and ed for the particular purpose of covering Oliver’s property from his creditors, by the shew of a prior lien. And it would have been as immoral in Addison, to have set up the bond and mortgage, to establish a debt due to himself, as it was in Oliver to fabricate such a bond and mortgage to cover his property from his creditors $ and if I could possibly sanction such a demand, the maxim applies that in such transactions, potior est conditio de« fendentis.
Mr. Geddes, for complainant.
Mr. Heath, for defendant.
It is therefore ordered and decreed that the bill be dismissed.
In such a case I cannot decree costs to be paid by the complainant to the defendant. But as Mr. Addison was not quite clear of blame in lending his name to sanction such a transaction, I think his estate ought to bear its costs. Let each party therefore pay his own costs.
Henrx W. Desausstjbe.
February 22, 1813.